Son of Voss, could we call it the SOB case, Counselor? Thinly-guised profanity. It's been a long time, since 1999 we've been dealing with these matters. It's not as bad as a collapsible corporation case, I will give you that. But talk to us about this case. Right up there with getting wisdom teeth taken out. May it please the Court, three points solve all of the multiplicity of proceedings problems and reconcile all of the implicated statutes. One, the Supreme Court is not only supreme, the Supreme Court was correct when Justice Scalia said every partner's outside basis must still be determined at the partner level before the penalties are imposed. Two, that Supreme Court sequence cures the algebraic absurdity. Any Algebra I student can tell us that if we take 40% times an unknown, we have an unknown. If we take 40% times an undetermined deficiency that must await this proceeding that we'd like to participate in and finally present our reasonable cause defenses, you come up with an unknown. When you apply the wrong 40%, when it should be a 20%, to a deficiency that includes non-basis items, you know that both prongs of the formula are wrong. Three, only the Supreme Court's sequence reconciles all of the impacted statutes. We focus principally upon section 6230A2, which deals with the deficiency proceeding that must go forward in the tax court because their partner level fact determinations I understand that you can't actually impose the tax until after certain partner level proceedings have taken place. But why can't the IRS either wait until the tax court proceedings are done or they could perform an abbreviated audit and find out what the basis was disregarding the partnership and then assess the deficiency and penalty. And it can be challenged either in a claim for refund or in this CDC due process, CDP I think they call it, process. So you don't even have to pay the tax and then sue for refund. You could wait until there's an assessment and then insist on this CDP proceeding before paying your tax and you can get all your defenses. There's a multiplicity of different proceedings and it's confusing because we start with the basic rule on every income tax case. I have the choice of going to tax court on a prepayment on Judge Anderson or district court on a refund basis or a court of federal claims. The complication here that we think that the Supreme Court sequence works, it makes sense to deal with the partnership penalty that relates to a partnership item and the partnership proceeding that's dealing with that. It makes sense to deal with the partner-level penalty that deals with the partner-level item, the yet-to-be-determined basis in that tax court proceeding. And that's the beauty of that sequence. There are alternative routes to your question. Absolutely, there are alternative routes. I have no doubt it would make more sense, but Congress didn't say that. Congress was pretty clear in what they said and it's not as efficient as your way. I agree, but it is possible to do it. It's not absurd. The IRS can wait. In fact, in my understanding, they have conceded in this case that the assessment was premature and it is now abated. Am I wrong in that regard? I guess I believe you are incorrect in that. And the other complication is after the partnership proceeding, the statute gives the government one year to issue a notice of computational adjustment. The government has never done that, but that would contain a purely computational determination. It's not supposed to contain any – But that's not before us. The weak premise, I think, of your syllogism is it would make more sense, therefore let's do it that way. The syllogism is the tax code must make sense and we can reform it, the premise is. Tax code must make sense and we can reform it if we think we can do it better. No, I understand that. It's the plain language. That's the impression that I may have given you. It's what the plain language requires regardless of whether it's senseless or full of sense. It's what the plain language says if it's plain. And we say that it's plain. Let's start with 6230A2. There's the parenthetical clause. It's the principal point of focus here. And it says other than a penalty that relates to an adjustment to a partnership item. It doesn't say anything about how you deal with penalties that relate to an affected item. That's left within the deficiency proceeding. And when you go on. No, no, no. What is left in the deficiency proceedings is the part of this same paragraph you're talking about, little i, affected items which require partner level determinations. Other than. So that this, I think this item here before us is both an affected item which requires partner level determination and a penalty dot, dot, dot that relates to adjustments to a partnership item. And the except other than controls. Well, that would render the parent, part of the parenthetical related partnership item surplusage. It only has. Not because there are plenty of other situations. If you, part of it goes to the definition of an affected item. All affected items have both partner level considerations and partnership level considerations. Congress, if they intended to ship all penalties to the partnership level, there's no need for this limitation of adjustments related to a partnership item. They've said all penalties are going to be handled at the partnership level. That's not what they said. An affected item penalty is left and has always been, the penalty itself has always been an affected item. If it relates to a partnership item, yes, it's got to be dealt with on a provisional basis only. And that's the predicate for Justice Scalia's quote that every partner's adjusted basis must be determined at the partnership level before the penalty may be imposed, which is consistent with the section 6664C reasonable cause statute that says no penalty may be imposed upon a showing of reasonable cause and good faith. And so his reading of these statutes together. So why can't the IRS do just what I said? They can wait until the tax code deficiency proceedings are over and then proceed, or they could do an abbreviated audit, get the proper basis, make their assessment, and then you can challenge it in a CDP. Two thoughts on that. One, I think the one-year limitation on the notice of computational adjustment limits the waiting ability. Two, this statute, this parenthetical statute, as you'll see in the House report, is there to serve two purposes. One, to reduce the load on the Internal Revenue Service and to reduce the tax court inventory. This CDP alternative doubles the tax court inventory at the partner level, and it doubles the burden on the Internal Revenue Service because before there is the tax court CDP collection due process proceeding, Your Honor, there is an administrative, there's a required administrative collection due process proceeding. So we've defeated both purposes for the very parenthetical amendment that was done in 1997. And so we say that Justice Scalia correctly harmonized all of these statutes, that you just can't take one parenthetical and then reduce the essential partnership item element of that parenthetical to a partnership item, excuse me, to a surplusage and say that all penalties have been exported to the partnership level. Three times he stressed the determination at the partnership level as only as to the potential applicability of the penalty there. Three times he says it's only provisional. And then he goes on with his point that our sequence, which not only, because it's the Internal Revenue Code, I completely embrace the concept. It doesn't have to make sense. In this instance, his harmonizing of the statutes does make sense, and we ask that this Court follow the Supreme Court sequence that he enunciated in Woods. Thank you, Your Honor. Thank you, sir. Ms. Warren. Thank you, Your Honor, and may it please the Court. It appears that the Court is well versed in the statute and the factual background of this case, so I'll cut to the chase. The tax court correctly rejected Highpoint's request to enjoin assessment and collection of the penalty because the plain language of Section 6230A2A1 of the Code expressly excludes, as relevant here, penalties that relate to adjustments to partnership items. How do you – it does seem to me that when you've got a 40 percent penalty, you can't assess, you can't impose the penalty until you know what the deficiency is. Well, Your Honor, the – and this gets a little bit back to what you were asking, Mr. Autry, and you were asking about why can't the IRS wait to assess until the end? There is a statute of limitations running on assessment as well. And so that creates a problem. I mean, if partners could simply push out deficiency proceedings until after the assessment statute of limitations. What are you going to do about that? We don't have that case, but he could have waited and let the statute of limitations run. He could have? Yeah. I mean, the – well, the Commissioner is the one who's got to file the notice of deficiency and assess within a certain period. That's right. And so because the penalty is excluded – Can you file a notice of deficiency? So the only way you can do it maybe is that kind of abbreviated audit so you can find out what the basis is, i.e., what this taxpayer paid for these euros when he originally bought it, disregarding the partnership. Well, there's nothing in the code that keeps the IRS from assessing that penalty that it determined after the partnership level proceeding. You can't say what the amount is. Can you assess it without knowing the amount? The IRS, based on the information in the taxpayer's return, did its computational adjustments. It's not making up numbers here. It's just disallowing certain things. So it had access to what the taxpayer had actually paid for originally before he contributed to the partnership. The IRS had access to the basis. Well, the IRS knew how much the partner had contributed to the partnership, which was a total of, between the options and the $62,500 cash, $181,000. Right. Now, just because there may be factual determinations left for a partner level proceeding doesn't mean any number is going to change necessarily. And, you know, if it did change, we would expect – How did they do it in this case? How did – there was a notice of a deficiency and an assessment in this case? An assessment, yes. And how did the IRS figure out what the basis was? Proper basis, as I understand it, would be what the taxpayer, which is Hightower, I guess, paid for the euros to begin with. Is that not correct? Well, in the notice of – excuse me. In the computational adjustments following the partnership level proceedings, you know, the IRS – and this gets to a little bit of the – of Mr. Autry's argument about the provisional nature of the penalty. It's provisional only in two senses. It's provisional in the sense that the Supreme Court recognized that there's no jurisdiction at the partnership level proceeding to impose that penalty or to make any adjustments to a partner's return. It's also provisional in the sense that the IRS has to look at the return to see whether the errors at the partnership level were carried through to the return. So the IRS here looked at the losses that were claimed. And because of the sham determination and the transactional economic substance, you found that there was zero. You apparently do not know the answer to my question. My question is how they knew what the basis was. My first question is, is it not true that to figure out what the deficiency is, you've got to know what the taxpayer paid for these zeros to begin with? Is that true? The deficiency – Your Honor, the way the code is set up, the IRS is excluded from deficiency proceedings with respect to the penalty. And nothing in the code keeps the IRS from assessing right after the – I understand all that. I'm trying to find out how they knew how much to assess. Based on the numbers that were originally reported on the return, that's what the IRS has to work with. If there is some sort of adjustment in the – Do they just zero it out as a sham transaction and then let him come in in the refund suit and say, oh, but wait, I paid $1.5 million for them? Well, in the deficiency proceeding – I mean, no, that's a yes or no question. Do they just zero it out as a sham? Correct, and that's on the record. All right, and if he wants to prove I paid $1.5 million, he comes in in the refund suit and does that, right? It's on them to raise any partner-level defenses. Okay, so that's how they did it here, question mark? Well, I mean, I assume so. This is a pretty standard son-of-a-boss case, so I don't think anything unusual was done here. So if you make a notice of deficiency and an assessment, that could be wrong in the numbers, but just because it's $10,000 off or $1 off, that doesn't disallow the whole thing. You still got your assessment. So you can assess even if you don't know precisely. Correct. That is correct. And the difficulty here, as I understand it, is he's got to pay the preliminary figure, has he not, and then go in and get the money back. It pays the preliminary figure based on zeroing out, and then he goes in and asks for a refund of what he has paid, hence the term refund. Right. I mean, there's a refund option, and what Mr. Autry has argued is that High Point couldn't afford to pay it within the six-month period. And the response to that is you shouldn't have been involved in sham transactions. That's your problem. Congress could have said any sham transaction, you lose everything on the basis, plus you owe us 50% of what you claimed, and that would not have been unconstitutional or contrary to any other statute. Well, it wouldn't matter if Congress said it in the statute. So basically, your position is, yeah, life is tough for tax shelters sometimes, the ones that are shams, and this is what happens, and we're not sympathetic. Right. Well, we aren't sympathetic, and the Code allows the Commissioner to do what he did here in assessing the penalties. Now, the Commissioner conceded that the capital gains item and the professional fees item were prematurely assessed and agreed to abate those. But there was the other income item, which is no longer an issue. High Point isn't arguing about that. But the penalties, you know. So at issue before us right now is no assessment issue. There is no assessment issue before us. You have conceded that the capital gain item and the other professional fees item, the assessment was premature, and the other item you just told me was not at issue. Right. High Point is not arguing. So it's just the penalties, whether the penalty, well, the question the tax court was addressing was whether it had jurisdiction to address the motion to restrain the penalties. And the tax court found it doesn't have jurisdiction over penalties that relate to adjustments to partnership items in a deficiency proceeding and therefore didn't have jurisdiction to. Can we affirm he'll be remitted to the refund mechanism? Well, if the statute has a run for that. I mean, they had six months to do that, but he can still do, or they can still do a CDP proceeding and pay nothing. So as a practical matter, what happens, you zero out the basis, but at some point it's determined zero is not the right number. It's a million dollars. And then that would impact this calculation, this 40% penalty, which is what, about $2 million right now. Right. So it turns out he doesn't owe $2 million. Maybe he owes half a million or one million. No, well, it won't be that low. If there's any — But let's assume it would be a lot lower. Right. Let's assume it would be half that. It would be one million. What happens at that point? We say the tax court has no jurisdiction. We've got looking at a $2 million penalty that ultimately won't be the right number. The right number might be, in theory, one million. How is that sorted out? Sort of at the end of the deficiency process, you know, the numbers are simply refigured. You know, it's just — In a CDP. It could be an abatement. In a CDP proceeding, right? Well, if the deficiency — in the deficiency proceeding, if there's any change at all, and there need not be in a deficiency proceeding, it's not inherent that there will be changes. If there's — if there's any adjustment here, it will be extremely minor because the year — Well, just assume a hypothetical. Right. If there's abatements, it's much larger than that, and it turns out that the actual number would be a million dollars in penalties. That's what's going to happen in the deficiency. Meanwhile, before that, we have this assessment proceeding for the penalty. How does that number get made right, that he doesn't have to pay the $2 million, he only has to pay $1 million in penalties? Well, the IRS abates, or if they had done a refund claim and had paid — and therefore, obviously, had paid — Well, it's just that he has no money to pay anything, so there's no refund claim here. If there's no refund claim and he hasn't yet done a CDP, then the numbers would be, you know, recalculated at the end of the deficiency proceeding. Counsel, is not the answer. If he cannot pay or does not pay, he can still insist on the CDP procedure. Correct. Correct. He doesn't have to pay anything. And he can assume, he can assert all of his defenses in that CDP unless they're frivolous. Right. Yeah. I mean, it really comes down to reasonable cause, pretty much, but in these cases — but partner-level defenses are available, so. If this Court has no further questions? I don't believe we do. Thank you, counsel. Thank you very much. Mr. Alter, five minutes. Before she leaves, Mr. Counsel, would you still — Sorry. I have one more question that I want to try to get my head around. It seems pretty clear to me we do not have, or the tax code did not have, jurisdiction over this penalty in the instant deficiency proceedings, and thus properly dismiss that portion of the case and decline the taxpayer's motion to restrain collection. It seems to me if the tax code had no jurisdiction and our appeal is from that very tax code proceeding, we also have no jurisdiction to address whether or not the IRS had authority to assess this penalty. Correct. I mean, we've argued in our brief that the assessment — his challenges to the assessment are really sort of a challenge to the validity of the assessment, and he raises a variety of grounds for that, but that's really sort of a timing kind of issue. Yeah. We have jurisdiction to determine whether the tax court was correct that it did not have jurisdiction. Correct. And if we determine that it is correct as to that, that's the end of the appeal. Yes. So you've got no business saying anything about assessment? Correct. Yes. Okay. Thank you. Mr. Autry. Actually, the partnership proceeding is by statute conclusive with respect to the partner-level proceeding. And the partnership-level proceeding sustained the final partnership administrative adjustment that said that all of the partnership transactions, including the purchase of the euros that were distributed, are deemed to be engaged in by the partner. And so as a conclusively established fact, those cost bases of those items were the obligation of the government to determine the basis as a consequence of the conclusively established partnership proceeding and its impact on the partnership. And the one thing that we know is that the government never made any audit, never made any inquiry. It deliberately assessed them. What does that have to do with whether the tax court has jurisdiction? Because it proves the point that one cannot say, oh, it's okay to read these statutes in a way that we impose a penalty and they start collecting assets on the penalties. A partnership has no jurisdiction. When you read those statutes, you cannot ignore the algebraic imponderable that led Justice is that every partner's adjusted basis must be determined at the partner level before it's imposed. It must be your earlier point. But he did not say that the tax court had jurisdiction in this situation. He did say that it cannot, the penalty cannot be imposed until the partner-level determination is made. And we've all agreed that the partner-level deficiency determination has to be made in the partnership level. And so there's no imposition that can be made of the penalty until that determination. That doesn't mean the tax court has jurisdiction of this dispute. We say that our reading of the parenthetical, coupled with our reading of 6221, coupled with our reading of 6664, saying no penalty may be imposed until there's a showing of reasonable cause and good faith, says that the tax court absolutely has jurisdiction to deal with and there's a fundamental But the statute doesn't say the tax court has jurisdiction. You may have gone one couple too far. I mean, the plain language of the statutes are contrary to you. Your Honor, I've been focusing upon 6230A2. Let me take a step back and focus upon the fundamental partnership jurisdictional statutes 6213 and 6214. The tax court absolutely has jurisdiction on all taxes and all income taxes, deficiencies and penalties under that statute. We then move to 6230 and we're trying to say does the tax court not have penalty jurisdiction when it deals with a pure partnership item reported, excuse me, pure partner item reported by the partner on the partner's individual return? Can we not deal, we know we've got to deal with a determination of deficiency and it's a basis, that deficiency is based on basis. Can we not deal with the basis penalty at the same time we deal with that? And we say that Congress deliberately imposing the limitation that relates to a partnership item in the parenthetical did not say all penalties go over. And so when you read these statutes in conjunction with each other, they lead you to the conclusion that Justice Scalia did. Yes, Justice Scalia was dealing with the partnership item, Judge Carnes, absolutely. But he's talking about the sequence, that the penalty cannot be imposed. And here the penalty was imposed. It was assessed after we were in tax court. They're out chasing the assets. After in tax court, we have a right to restrain against that premature collection. Is it not true that you can, without prepaying, you can make these arguments in a CDP proceeding? You can and we say that's not required. We would rather deal with our defenses straight up and say we don't owe a person. I understand you'd rather do that. And we think the statute allows us to do that. It's not impossible for you to assert your defenses without paying, i.e., in the CDP. You're correct, Your Honor. We do have the ability to, as an alternative, after we take the assessment that we think is inappropriate, to contest that in a collection due process. And that alternative satisfies Scalia's idea of how it should work. You don't have to have the refund suit because you have that alternative. No, Your Honor, because under that circumstance. I'm sorry. You don't have to have tax court jurisdiction because you have that alternative. The penalty in that circumstance has been imposed before the determination of the basis or the deficiency or reasonable cause. So it reverses Justice Scalia's sequence, and we're asking you to follow that sequence. As a practical matter, I'm sure your client doesn't care much about who has jurisdiction where. He cares. It cares about money. As a practical matter, because you're not doing this at the deficiency stage, you're challenging this because they're trying to go after assets right now. Yes. And what your client wishes to do is to forestall that. Is that essentially the practical consequence of all this? We don't want to pay money we don't owe, and we're confident we don't owe it. And so, yes. And we don't want our assets taken because that damages the value of what assets we have left. All you have to do is insist on this CDP proceeding. Would that forestall the attempt to collect the assets if you want the deficiency route? If the government issued a CDP notice, then that would give us a right to go to CDP. Until then, we don't have the right to go to CDP. Thank you. Thank you. We'll take that case under submission.